1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| M.E., a minor, by and through her Guardian ad Litem, KATHLEEN GARVIN; MARY ERLENMEYER and MICHAEL ERLENMEYER, individually and on behalf of their marital community,<br><br>                         Plaintiffs,<br><br>   v.<br><br>THE UNITED STATES OF AMERICA and CLALLAM COUNTY PUBLIC HOSPITAL DISTRICT NO. 2 d/b/a OLYMPIC MEDICAL CENTER,<br><br>                         Defendants. | NO. 3:20-cv-5558<br><br>COMPLAINT FOR DAMAGES [MEDICAL NEGLIGENCE] |

COME NOW THE PLAINTIFFS, by and through their attorneys of record, OTOROWSKI MORROW & GOLDEN, PLLC, and for their causes of action against the defendants allege as follows:

## I.    **IDENTIFICATION OF PLAINTIFFS**

1.1    <u>M.E. BY AND THROUGH GUARDIAN AD LITEM KATHLEEN GARVIN</u>

At all times material hereto, the plaintiff, M.E. was the minor daughter of Mary Erlenmeyer and Michael Erlenmeyer and resides with them in Forks, Clallam County, Washington. M.E. was born on December 29, 2017 and brings her claims through Kathleen

COMPLAINT FOR DAMAGES- 1 of 15

OTOROWSKI MORROW & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WASHINGTON 98110
(206) 842-1000; (206) 842-0797 FAX

Garvin as Litigation Guardian ad Litem. Kathleen Garvin was appointed as Litigation Guardian ad Litem for M.E. on June 2, 2019 in King County Superior Court (Cause No. 19-4-11588-0 SEA), Seattle, Washington. At all times material hereto, M.E. received health care services in Clallam County, Washington, from Olympic Medical Center and  from the United States of America doing business as North Olympic Health Care Network (hereinafter "NOHN") and its partners, employees, agents and/or ostensible agents, including but not limited to, Ned Hammar, M.D. and S. Robert Epstein, M.D. and there existed a fiduciary health care provider-patient relationship between M.E. and the defendants.

    1.2   MARY ERLENMEYER AND MICHAEL ERLENMEYER.

At all times materials hereto, the plaintiffs, Mary Erlenmeyer and Michael Erlenmeyer were the natural parents of M.E. The Erlenmeyers were married and reside in Clallam County, Forks, Washington, at all times material hereto.   At all times material hereto Mary Erlenmeyer received health care services in Clallam County, Washington from Olympic Medical Center and from the NOHN and its partners, employees, agents and/or ostensible agents, including but not limited to, Ned Hammar, M.D. and S. Robert Epstein, M.D. and there existed a fiduciary health care provider-patient relationship between Mary Erlenmeyer and the defendants.

## II.   IDENTIFICATION OF DEFENDANTS

    2.1   UNITED STATES OF AMERICA.  Defendant United States of America is a named defendant pursuant to the Federally Supported Health Centers Assistance Act, 42 U.S.C.. § 233, and the Federal Tort Claims Act, 28 U.S.C. §§§ 1346(b), 2671 *et. seq.*, and 2679 *et. seq.*

    2.1.1   On November 12, 2019, Claims for Damages on behalf of M.E., Mary Erlenmeyer and Michael Erlenmeyer, pursuant to the FTCA, were submitted to and received by the U.S. Department of Health and Human Services.

COMPLAINT FOR DAMAGES- 2 of 15

OTOROWSKI MORROW & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WASHINGTON 98110
(206) 842-1000. (206) 842-0797 FAX

2.1.2   NOHN is a federally funded health center pursuant to the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233. The United States of America authorized NOHN to provide health care services and treatment in Clallam County, Washington pursuant to FSHCAA. At all times material hereto, defendant, United States of America, through NOHN, provided health care services and treatment to Mary Erlenmeyer and M.E., through its partners, employees, agents, and/or ostensible agents, including NOHN and there existed a fiduciary healthcare provider-patient relationship between the United States of America, its partners, employees, agents and/or ostensible agents, and Mary Erlenmeyer and M.E.

2.1.3   During the relevant time period pertaining to the claims alleged in the Complaint, NOHN and its employees were deemed "federal employees" pursuant to the FSHCAA.

2.1.4   During relevant time periods, Ned Hammar, M.D. and S. Robert Epstein, M.D. were employees and agents of NOHN and defendant Clallam County PHD #2 d/b/a Olympic Medical Center (hereinafter "OMC").

2.1.5   During the relevant time period, Ned Hammar, M.D. and S. Robert Epstein, M.D. were acting within the scope of their employment and agency relationship with NOHN and OMC.

2.1.6   Pursuant to the FSHCAA, a lawsuit brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2679 *et. seq.*, is the sole and exclusive remedy for such medical negligence claims.

COMPLAINT FOR DAMAGES- 3 of 15

OTOROWSKI MORROW & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WASHINGTON 98110
(206) 842-1000; (206) 842-0797 FAX

2.2     CLALLAM COUNTY PUBLIC HOSPITAL DISTRICT NO. 2 D/B/A OLYMPIC MEDICAL CENTER

2.2.1   At all times material hereto, OMC was a public hospital district of Washington state, duly authorized to provide health care services and treatment in Clallam County, Washington.

2.2.2   At all times material hereto, OMC provided health care services and treatment to plaintiffs M.E. and Mary Erlenmeyer, through its partners, employees, agents and/or ostensible agents, including but not limited to Ned Hammar, M.D. and S. Robert Epstein, M.D. and there existed a fiduciary health care provider-patient relationship between OMC, its partners, employees, agents and/or ostensible agents, and M.E. and Mary Erlenmeyer.

## III.   ADMINISTRATIVE PRE-FILING COMPLIANCE

3.1     On or about November 12, 2019, Claims for Damages pursuant to 28 U.S.C. . §2401(b), on behalf of M.E., Mary Erlenmeyer and Michael Erlenmeyer were submitted to and received by the U.S. Department of Health and Human Services, the appropriate federal agency, in a timely manner.

3.2     Defendant United States of America has failed to make final disposition of these claims within six months of November 12, 2019, and therefore the above entitled action is timely pursuant to 28 U.S.C. §2675(a).

3.3     Plaintiffs M.E., Mary Erlenmeyer and Michael Erlenmeyer have satisfied all applicable requirements of 28 U.S.C. §§2401 and 2675.

3.4     On February 14, 2020, pursuant to RCW 4.96 *et al.,* OTOROWSKI MORROW & GOLDEN. PLLC, attorneys for plaintiffs, presented their claims for damages to the designated agents to receive claims for damages under RCW 4.96 at OMC.  On February 14, 2020, Jennifer

COMPLAINT FOR DAMAGES- 4 of 15

OTOROWSKI MORROW & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WASHINGTON 98110
(206) 842-1000; (206) 842-0797 FAX

Burkhardt, General Counsel for OMC accepted service of the Claims for Damages for M.E., Mary

Erlenmeyer and Michael Erlenmeyer, on behalf of Eric Lewis, CEO of OMC, Donna Davison,

Risk Manager for OMC and on behalf of herself, all designated to receive claims for damages

under RCW 4.96 at OMC.  More than 61 calendar days have elapsed since the presentment of the

Claim for Damages to the designated agents for OMC.

## IV.   JURISDICTION AND VENUE

4.1     This Court has jurisdiction over M.E., Mary Erlenmeyer and Michael Erlenmeyer

in their claim against the United States of America pursuant to 28 U.S.C. §§§§1346(b), 2401, 2671

*et. seq.*, and 2679 *et. seq.*

4.2     This Court has personal jurisdiction over defendant NOHN pursuant to 28 U.S.C.

§§§§1346(b), 2401, 2671 *et. seq.*, and 2679 *et. seq.*

4.3     This Court has personal jurisdiction over defendant OMC pursuant to 28 U.S.C.

§§§ 1346(b), 1367, and 2679 *et. seq.*

4.4     At all times material hereto, the alleged acts of negligence as outlined herein

occurred at North Olympic Health Care Network and Olympic Medical Center, Port Angeles,

Clallam County, Washington; therefore, venue is proper in this Court pursuant to 28 U.S.C.

§1402(b).

## V.   STATEMENT OF THE FACTS

5.1     Mary Erlenmeyer became pregnant with M.E. during the month of March, 2017.

She had her first prenatal visit with Ned Hammar, M.D. at North Olympic Healthcare on July

3, 2017.  Dr. Hammar noted in Mrs. Erlenmeyer's chart that the purpose of the visit was:

"supervision of high risk pregnancy, 2nd trimester."  Dr. Hammar did not note the reason why

he evaluated Mrs. Erlenmeyer's pregnancy as "high risk."

COMPLAINT FOR DAMAGES- 5 of 15

OTOROWSKI MORROW & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WASHINGTON 98110
(206) 842-1000: (206) 842-0797 FAX

5.2     Mrs. Erlenmeyer presented to Dr. Hammar for a follow up prenatal examination on August 31, 2017. Dr. Hammar noted in his patient chart: "A/P: Doing Well. Discussed with specialist, will refer at 28 weeks."

5.3     On September 21, 2017 Mrs. Erlenmeyer saw Dr. Hammar for a prenatal follow-up visit. Dr. Hammar again noted in his patient chart that Mrs. Erlenmeyer reported that she felt well overall, and that there was good fetal improvement.

5.4     Mrs. Erlenmeyer continued to follow up with Dr. Hammar and her pregnancy progressed well.   On September 27, 2017, Dr. Hammar noted in his chart that Mrs. Erlenmeyer's pregnancy was high risk. Mrs. Erlenmeyer continued to follow up with North Olympic Healthcare and Dr. Hammar.

5.5     On October 5, 2017, Mrs. Erlenmeyer was seen at Swedish Medical Center for a consultation with a maternal fetal medicine specialist and an ultrasound. Everything was found to be normal.

5.6     On November 8, 2017, at 33 weeks pregnant, Mrs. Erlenmeyer called North Olympic Healthcare and spoke with Terri Hauff, LPN. Mrs. Erlenmeyer reported suffering right sided abdominal pain radiating to her back that started two days prior to her call. She rated her pain at a level 8 on a scale of 0 to 10 with 0 meaning no pain and 10 meaning the most severe pain. Ms. Hoff referred her to the Obstetrics department. A nonstress test was performed which was normal.

5.7     On November 10, 2017 Mrs. Erlenmeyer returned to Dr. Hammar with reports of ongoing right upper quadrant pain that she rated at a severity level of 2 out of 10. Dr. Hammar noted trace pitting edema in his chart notes. Dr. Hammar reviewed hydration and deep breathing exercises with Mrs. Erlenmeyer and recommended that she return for a follow

COMPLAINT FOR DAMAGES- 6 of 15

OTOROWSKI MORROW & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WASHINGTON 98110
(206) 842-1000; (206) 842-0797 FAX

up appointment in one week.  Dr. Hammar noted no right upper quadrant pain, bleeding or swelling and "outstanding blood sugars" in his chart for Mrs. Erlenmeyer's November 16, 2017 visit.

5.8    Mrs. Erlenmeyer presented to Dr. Hammar again on November 30, 2017 at week 36 of her pregnancy. Dr. Hammar noted in his charts for this visit that she felt good, with good fetal movement.  She reported a mild headache that improved with Tylenol, some right upper quadrant pain that resolved, and good blood sugars.  Her unborn baby was in vertex presentation, facing head-down in the birth canal.

5.9    Mrs. Erlenmeyer continued to follow up with Dr. Hammar on a weekly basis as recommended. She next saw him on December 4, 2017.  Dr. Hammar noted in his chart that she felt well, good fetal movement, no headache, no right upper quadrant pain, no contractions, with her baby in vertex presentation.

5.10    On December 9, 2017, Mrs. Erlenmeyer presented in late morning to OMC Labor and Delivery with ongoing complaints of contractions, headache, nausea and profuse emesis of stomach contents since 0230.  She was placed in an outpatient bed and an electronic fetal monitor was placed.  Dr. Epstein was notified and provided orders for medication over the phone to the nursing staff.

5.11    Mrs. Erlenmeyer's estimated date of confinement (delivery date, "EDC") was December 25, 2017.  Mrs. Erlenmeyer had not experienced pre-term contractions prior to developing symptoms on the evening of December 8, 2017. On December 9, 2017 the fetal monitor strip was interpreted to show moderate variability with contractions spacing out at every ten minutes and no decelerations.

COMPLAINT FOR DAMAGES- 7 of 15

OTOROWSKI MORROW & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WASHINGTON 98110
(206) 842-1000; (206) 842-0797 FAX

5.12   Fetal ultrasound performed on December 9, 2017 showed the fetus to be in vertex position.

5.13   On December 9, 2017 Dr. Epstein arrived and evaluated Mrs. Erlenmeyer at 1415, whose symptoms had improved since arrival at OMC.  The baseline fetal heart rate was documented to be 140 beats per minute with moderate variability (amplitude range of 6-25 bpm) and the nonstress test was deemed to be "nonreactive."

5.14   Mrs. Erlenmeyer continued to follow up with Dr. Hammar on December 12, 2017.  Dr. Hammar noted in the chart that he continued supervision of her high risk pregnancy. He noted that she presented feeling well overall, with good fetal movement, no headaches, no right upper quadrant pain, no bleeding, no scotomata, no contractions, nausea and vomiting improving.  He noted that "she thinks she lost her mucus plug."

5.15   Mrs. Erlenmeyer had her final prenatal visit with Dr. Hammar on December 21, 2017.  Dr. Hamnmar noted in his chart that she felt well, with good fetal movement, no headache, no right upper quadrant pain, no contractions, no scotomata and she thinks she lost her mucus plug.  Dr. Hammar noted Mrs. Erlenmeyer's gestational diabetes was well controlled.

5.16   On December 28, 2017, three days after her due date, at 10:54 a.m., Mary Erlenmeyer entered the Olympic Medical Center to give birth.   The estimated gestational age of the fetus was documented to be 40 weeks, 3 days.  The delivery was to be induced because Ms. Erlenmeyer was past her due date.  Ned Hammar, M.D., a family practice physician, was the physician assigned to Ms. Erlenmeyer when she entered the Olympic Medical Center.  Dr. Hammar was Mrs. Erlenmeyer's primary care doctor during her pregnancy. The medical records once again indicate that Mrs. Erlenmeyer's pregnancy was

COMPLAINT FOR DAMAGES- 8 of 15

OTOROWSKI MORROW & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WASHINGTON 98110
(206) 842-1000; (206) 842-0797 FAX

considered to be high risk.

5.17    The nurses notes document that intermittent, variable decelerations first occurred at 1200 on December 28, 2017. Between 1200 and 2119 there were some intermittent declarations. At 2119, late decelerations began appearing and continued to the time of delivery at 0242 on December 29, 2017. Nursing records show 19 different entries for decelerations including late decelerations.

5.18    At 2230, Dr. Hammar called Dr. Epstein, another family practitioner who holds himself out as having clinical interests in Obstetrics/High Risk and medically complicated Obstetrics, to come see the patient because of category II fetal heart tracings and to assist in delivery.

5.19    The late decelerations and category II and category III tracings continued for over 5 hours until delivery, during which time the fetus was experiencing periods of hypoxia.

5.20    Because of the slow progress of the delivery and the continued decelerations, the attending physicians, at approximately 0220 considered performing a cesarean section. However, before proceeding with the cesarean section, the attending physicians attempted to complete the delivery by using vacuum extraction. The medical records indicate that the attending physicians made multiple unsuccessful attempts at a vacuum extraction delivery at 0221 on December 29, 2017.

5.21    After three recorded failed vacuum extraction delivery attempts, the physicians made preparations to proceed with a cesarean section delivery. The medical records indicate that at 0231 Mrs. Erlenmeyer was transferred to the operating room to for an emergency cesarean section . At that point, there was no documented fetal heartbeat.

COMPLAINT FOR DAMAGES- 9 of 15

OTOROWSKI MORROW & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WASHINGTON 98110
(206) 842-1000; (206) 842-0797 FAX

5.22    After being transferred to the operating room, the attending physicians noted that the baby had descended further.  Vacuum extraction was attempted again and after multiple pulls the baby was delivered by Dr. Epstein at 0242.  The newborn baby had no respiratory effort, heartbeat or pulse.  Resuscitation efforts were started and a neonatal code was called at 0244.

5.23    The operating room was not properly prepared and ready for this delivery.

5.24    OMC did not have a neonatal resuscitation team ready at the time of arrival in the delivery room, further delaying proper resuscitation of the infant.

5.25    The medical records indicate that Code was called at 0244 some two minutes following delivery.  The Code team arrived at 0245.  The baby was not intubated until 0249. Epinephrine was administered and an umbilical line was placed at 0254 and again at 0257,

5.26    The medical records indicate that the baby's heartbeat was established at 0259, some 17 minutes after delivery.

5.27    Because of adverse weather conditions, an air transport to Childrens Hospital and Medical Center in Seattle was not possible and the newborn baby was transferred by ground ambulance to the neonatal ICU unit at Mary Bridge Children's Hospital where she stayed for 40 days.  The baby was released from Mary Bridge Children's Hospital on February 8, 2018.

5.28    M.E. experienced catastrophic injuries as a result of the multiple failures of the physicians and OMC and now suffers lifelong disabilities as described in Section VII, below.

## VI.    LIABILITY AND NEGLIGENCE

6.1    This is an action for professional negligence, malpractice against the defendants brought pursuant to the laws of the United States of America and the state of Washington, to include 28 U.S.C. § 1346, the Federal Tort Claims Act, RCW 7.70 et seq., RCW 4.20 et seq., and

OTOROWSKI MORROW & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WASHINGTON 98110
(206) 842-1000; (206) 842-0797 FAX

ordinary negligence. Plaintiffs hereby notify defendants, United States of America, NOHN, and OMC that they are pleading all theories of recovery and bases for liability available pursuant to law to include negligence, lack of informed consent, direct corporate negligence and otherwise failure to render the necessary medical care and treatment that M.E. and Mary Erlenmeyer required.

6.2     As a direct and proximate result of the fiduciary healthcare provider-patient relationship that existed between the defendants and plaintiffs M.E. and Mary Erlenmeyer, the defendants owed duties to provide reasonably prudent medical care, including but not limited to, properly, adequately and timely manage, monitor, treat, diagnose, intervene, refer and consult regarding Mary Erlenmeyer's pregnancy, labor and delivery; properly inform Mary Erlenmeyer of material risks to their approach to treatment; properly obtain Mary Erlenmeyer's informed consent to treatment; and otherwise render the necessary care that Mary Erlenmeyer and M.E. required.

6.3     During the course of their relationship, the defendants breached their duties owed to M.E. and Mary Erlenmeyer, including, but not limited to, failing to properly and timely monitor, manage, diagnose, treat, and consult during labor and delivery; failing to properly inform Mary Erlenmeyer of the material risks to their approach to treatment; failing to properly obtain Mary Erlenmeyer's informed consent to treatment; and otherwise failing to render the necessary care Mary Erlenmeyer and M.E. required.

6.4     M.E. was born of her mother's first pregnancy, complicated by maternal obesity and gestational diabetes mellitus, treated by dietary changes alone. Because of these pregnancy complications, Mrs. Erlenmeyer was a candidate for scheduled cesarean section. Defendants did not advise Mrs. Erlenmeyer of the risks of a vaginal delivery associated with these

COMPLAINT FOR DAMAGES- 11 of 15

pregnancy complications and did not advise her of her option to have a scheduled cesarean section.   During labor, induced with Cervidil and Pitocin, significant abnormalities were demonstrated in the fetal monitoring strip with both frequent and prolonged decelerations, occurring during protracted attempts at vacuum extraction.   At birth M.E. was neurologically depressed with both low Apgar scores of 1 at 1 minute and 1 at 5 minutes signifying evidence of profound metabolic acidosis.   Following her resuscitation, evidence of a neonatal encephalopathy was present, with contemporaneous diagnosis of an hypoxic-ischemic encephalopathy.

6.5    It was below the standard of care for defendants not to advise Mrs. Erlenmeyer of the risks of vaginal delivery with maternal obesity and gestational diabetes. It was below the standard of care for defendants to continue with a plan of vaginal delivery after the pattern of late decelerations with diminished variability were revealed on the fetal monitor strip. A recommendation of a cesarean section delivery should have been made by the physicians.  It was below the standard of care for defendants not to have an operating room prepped, clean, and available throughout Mrs. Erlenmeyer's labor so that she would not have to wait for an available operating room in the event that an emergency cesarean section became necessary.

6.6    It was below the standard of care to attempt multiple, protracted vacuum assisted deliveries when fetal monitoring strips demonstrated significant abnormalities, including frequent and prolonged late decelerations with poor variability. As a direct and proximate result of defendants' failures to 1) perform a cesarean section, 2) have an operating room available for emergency cesarean delivery throughout Mrs. Erlenmeyer's labor, 3) promptly deliver M.E. by emergency cesarean section when significant abnormalities presented on the electronic fetal monitoring strip, and 4) failure to provide prompt resuscitation and life support to M.E.

COMPLAINT FOR DAMAGES- 12 of 15

OTOROWSKI MORROW & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WASHINGTON 98110
(206) 842-1000; (206) 842-0797 FAX

immediately after her vaginal birth, plaintiffs have suffered severe, permanent, and debilitating injuries and damages as described below.

6.7     Immediately following delivery, the following were noted:

    a.     Fetal acidemia;

    b.     Neonatal seizures requiring anti-seizure medications;

    c.     No respiratory effort and respiratory failure requiring intubation with ventilatory support;

    d.     An extraordinarily low pH of 6.55 at 0326, (a value nearly incompatible with life);

    e.     Complete lack of motor movement;

    f.     At 8 hours of life, M.E. underwent cooling therapy to reduce potential brain injury;

    g.     M.E. was experiencing neonatal encephalopathy;

    h.     Abnormal EEG study because of generalized burst suppression;

    i.     MRI findings consistent with ischemia of the basal ganglia, bilaterally with other findings in the frontal cortex, frontal lobe, corpus callosum and mid brain all as a result of hypoxic ischemic encephalopathy.

6.8     Except for the evident neurologic injury, M.E. was normal in all anatomical respects and if reasonably prudent care had been provided during labor and delivery and neonatal resuscitation, she would have been delivered healthy and neurologically intact and would have looked forward to a normal life.

6.9     As a result of the defendants' negligence, M.E. will require full time 24/7 care the rest of her life and will never be able to live independently.

OTOROWSKI MORROW & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WASHINGTON 98110
(206) 842-1000: (206) 842-0797 FAX

## VII.   DAMAGES

7.1     As a direct and proximate result of the defendants' negligence and breach of duties, M.E. has suffered permanent damages and serious damages including but not limited to hypoxic-ischemic insult; aspiration of meconium; brain damage; generalized sensorimotor deficits affecting all developmental functions including fine and gross motor skills, anti-gravity control, vision and hearing, receptive and expressive language and social interaction; inability to hear, see or communicate; inability to eat on her own; symptoms of cerebral palsy and other injuries which are permanent and that will require care and medical treatment for the remainder of her life; and all other damages recoverable under state and federal law, which will be proven at the time of trial as reasonable and proper as determined by the trier of fact.

7.2     As a direct and proximate result of defendants' negligence and breach of duties, plaintiffs, Mary Erlenmeyer and Michael Erlenmeyer, mother and father of plaintiff M.E., in conjunction with experienced medical providers and attendant care providers, will have to provide lifetime care to their daughter because of her permanent and serious injuries.  They will continue to suffer mental and emotional damages and damages resulting from loss of consortium.  Damages will be proven at the time of trial and damage amounts will be deemed reasonable and proper as determined by the trier of fact.

## VIII.   LIMITED WAIVER OF PHYSICIAN/PATIENT PRIVILEGE

8.1     Pursuant to RCW 5.60.060(4)(b), plaintiffs hereby waive the physician/patient privilege only insofar as necessary to place any and all alleged damages at issue at the time of trial, as might be required by statute or amended statute or case law interpreting the statutes of the State of Washington.  It should be understood that plaintiffs' actions do not constitute a waiver of any of their constitutional rights and that the defendants are not to contact any treating physicians without first notifying counsel for the plaintiffs so they might bring the matter to the attention of the Court

COMPLAINT FOR DAMAGES- 14 of 15

OTOROWSKI MORROW & GOLDEN, PLLC
ATTORNEYS AT LAW
298 WINSLOW WAY WEST
BAINBRIDGE ISLAND, WASHINGTON 98110
(206) 842-1000; (206) 842-0797 FAX

and seek appropriate relief, including imposing limitations and restrictions upon any desire or intent by the defendants to contact past or subsequent treating physicians *ex parte* pursuant to the rule announced in *Loudon v. Mhyre*, 110 Wn.2d 675 (1988); and *Smith v. Orthopedics International, Ltd., P.S.*, 170 Wn.2d 659 (2010).

WHEREFORE, plaintiffs pray for judgment against the defendants by way of damages in such amounts as might be proven at the time of trial and decided and determined by the trier of fact as reasonable and just under the evidence, as well as for costs and disbursements herein incurred, and for such other relief as the Court may deem just and equitable.

DATED this 11th of June, 2020.

OTOROWSKI MORROW & GOLDEN, PLLC

By:
Christopher L. Otorowski, WSBA #8248

By: Jane Morrow
Jane Morrow, WSBA #22533

Attorneys at Law
298 Winslow Way West
Bainbridge Island, WA 98110
Phone: 206-842-1000
Fax: 206-842-0797
Email: clo@medilaw.com
Email: jm@medilaw.com
Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES- 15 of 15